### STATE v. LANO.
### No. 4450.

Circuit Court, Dade County, Criminal Appeal.

December 20, 1957.

Irving M. Wolff, Miami, and Ben Cohen, Miami Beach, for appellant.

Richard E. Gerstein, State Attorney, and Glenn C. Mincer, Ass't. State Attorney, for appellee.

JOHN W. PRUNTY, Circuit Judge.

Now before the court is an appeal from the judgment and sentence of the court of crimes for Dade County. The appellant Sam Lano and Sadie Lano, his wife, were charged in a seven-count information with unlawfully owning or permitting the operation of coin-operated machines of the type declared illegal under section 849.16, Florida Statutes. The only difference in the counts is that the names of the machines vary, one count referring to each machine in question, and the names contain the intriguing connotations of "Dragonette", "Ballsa Poppin", "Auto Race", "Fun House", "Register", "Capri" and "Fair Lady".

The appellant filed a motion to suppress the evidence claiming that the evidence seized, consisting of the machines in issue, had not been safeguarded and preserved in accordance with statutory requirements. The motion to suppress the evidence was denied by the trial court. Chapter 18143, section 4, Laws of Florida 1937, appearing as section 849.17, Florida Statutes, provides—

Upon the arrest of any person charged with the violation of any of the provisions of §§849.15-849.23 the arresting officer shall take into his custody any such machine, apparatus or device, and its contents, and the sheriff, at the place of seizure, shall make a complete and correct list and inventory of all such things so taken into his custody, and deliver to the person from whom such article or articles may have been seized, a true copy of the list of all such articles. Upon making such a seizure the sheriff shall, forthwith and without delay, deliver each and every item of the things taken into his custody to the clerk of the circuit court of the county in which such seizure is made, and upon delivery, deliver therewith to said clerk the original list and inventory so made by said sheriff at the time and place of such seizure; and upon such delivery the clerk shall verify said list and inventory and mark

each item for identification and make a complete and correct list and inventory of the things delivered to him by the sheriff, in duplicate, duly certified by him officially, and deliver one copy thereof to the sheriff, and deposit one copy in proper safety files in his office. The clerk of the circuit court shall keep and preserve all things so delivered to him and have the same forthcoming at any investigation, prosecution or other proceedings, incident to charges of violation of any of the provisions of §§849.15-849.23.

Chapter 29712, section 3, Laws of Florida 1955, appearing as section 849.37, Florida Statutes, provides—

(1)   Every peace officer, other than the sheriff, seizing property pursuant to the provisions of §§849.36-849.46 shall forthwith make return of the seizure thereof and deliver the said property to the sheriff of the county wherein the same was seized. The said return to the sheriff shall describe the property seized and give in detail the facts and circumstances under which the same was seized and state in full the reason why the seizing officer knew, or was led to believe, that the said property was being used for or in connection with a violation of the statutes and laws of this state prohibiting lotteries and gambling in this state. The said return shall contain the names of all persons, firms and corporations known to the seizing officer to be interested in the seized property.

(2)   When property is seized by the sheriff pursuant to this chapter, or when property seized by another is delivered to the sheriff as aforesaid, he shall forthwith fix the approximate value thereof and make return thereof to the clerk of the circuit court as hereinafter provided.

(3)   The return of the sheriff aforesaid shall contain a schedule of the property seized describing the same in reasonable detail and give in detail the facts and circumstances under which it was seized and state in full the reason why the seizing officer knew or was led to believe that the property was being used for or in connection with a violation of the statutes and laws of this state prohibiting lotteries or gambling in this state; and a statement of the names of all persons, firms and corporations known to the sheriff to be interested in the seized property; and in cases where the said property was seized by another the sheriff shall attach to his said return, as an exhibit thereto, the return of the seizing officer to him.

(4)   The sheriff shall hold the said property seized pending its disposal by the court as hereinafter provided.

Upon first inspection it appears that some conflict may exist between these two statutory procedures for handling seized items of evidence. The sheriff and the clerk have attempted to resolve any inconsistency by the appointment of the same individual person as both a deputy sheriff and a deputy clerk.

This individual in his dual capacities received, receipted for, and held the items of evidence in question. This arrangement was objected to by appellant.

Appellant, however, fails to show in the record or in his brief that this procedure adversely affected him. There is no suggestion that the evidence was tampered with or damaged in any way.

Moreover, it appears that the actions of the sheriff and clerk were an honest and sincere effort to protect the state and appellant although, in the opinion of this court, unnecessary. It appears that section 849.37, Florida Statutes, having been enacted in 1955 is controlling as to the present procedure for the handling and disposition of seized items of the character here involved. There is no contention by appellant that the individual holding the items was not a proper deputy sheriff, therefore, there is no merit to the assignment of error with reference to the denial of the motion to suppress the evidence.

The defendants came to trial on July 16, 1957, and a jury was duly empaneled and sworn. Thereupon, appellant Sam Lano was permitted to withdraw his plea of not guilty and to enter a plea of guilty on all counts of the information.

Appellant contends this action was in exchange for a nolle prosequi as to the defendant Sadie Lano, and the record does disclose that the nolle prosequi was entered simultaneously with the change of pleas by appellant Sam Lano.

The jury was discharged from further consideration of the cause and the trial court forthwith proceeded to enter a judgment of conviction against appellant on all counts and sentenced him to pay a fine of $500 on count one of the information, sentenced him to serve three months in the county jail on count two of the information and suspended sentence on the remaining counts of the information.

The appellant contends that the trial court erred in failing to determine and establish the corpus delicti before convicting and sentencing the defendant.

In a criminal prosecution the defendant has a right to plead guilty and the effect is to authorize a conviction and imposition of sentence. In fact, it is generally held that a plea of guilty waives all defenses, except the contention that the information fails to charge a crime. Such a contention is not urged by appellant in his argument.

Certain jurisdictions have even extended the plea of guilty as far as dispensing with the necessity of proving a corpus delicti. Florida decisions apparently have not yet reached that liberal view of the guilty plea.

In the case of Gibbs v. Mayo, 81 So. 2d 739, the Supreme Court of Florida announced—"A plea of guilty admits only the *acts* charged and does not preclude the defendant from claiming that

such facts charged do not constitute a crime." (Emphasis supplied.) See also Ex Parte Stirrup, 19 So. 2d 712.

The information in this case did not charge appellant with possessing gambling equipment but on the contrary charges him with owning or possessing coin-operated machines of the type and character declared illegal by section 849.16, Florida Statutes.

The statute itself indicates that all coin-operated machines are not per se illegal, but only those particular machines which fall within the precise definition set forth. This has been recognized by the Florida Supreme Court in Stoutamire, Sheriff, v. Pratt, 5 So. 2d 248, wherein the court carefully examined a machine in which miniature horses raced on a track and stated—"The machine as operated, as we see it, does not constitute a game of chance within the purview of the statutes referred to because the user of this machine does not receive, or become entitled to receive, anything whatsoever."

Also in Deeb v. Stoutamire, 53 So. 2d 873, our Supreme Court carefully examined the operation of another type of coin-operated machine. This time it was the "Bally Speed Bowler", a miniature bowling alley. The court made this comment—

> The machine pays the player nothing whatever in merchandise, money, or tokens, the only return for his investment being amusement, and the only reward for his skill being an extra game free if he makes a score of 160 or higher. Nothing whatever is done by the machine except the registering of the score and, we think, the amount of the score depends entirely on the skill of the player.
>
> The law denouncing slot machines defines them as devices so adapted that "as a result of the insertion" of a coin they are "caused to operate or may be operated, and by reason of *any element of chance or of other outcome of such operation unpredictable by him,* the user may receive or become entitled to receive * * * thing of value" or anything which may be exchanged for something of value, such as money or merchandise, "or the user may secure additional * * * rights" to play, "even though (the machine) may, in addition to any *element of chance or unpredictable outcome*" deliver merchandise or entertainment. 849.16, Florida Statutes 1941, and F.S.A.
>
> We have italicized the characteristics which we think differentiate an innocent machine, vending amusement or entertainment, from a guilty one affording a means of gambling.
>
> These features also were uppermost in the mind of the chancellor. After reciting that the contraption now involved was constructed "as nearly as practicable to make it conform to the mechanics of conventional bowling and to render it a game of skill alone," he, nonetheless, felt that its use was prohibited by the statute because of an element of chance or other outcome unpredictable by the player. Although he decided the game was primarily one of skill, he thought there were some

elements of mechanical chance, such as a spot of moisture or roughness on the alley or a bit of rust on the puck.

In the last analysis, we must decide the nature of the result which is unpredictable by the player. Certainly the outcome of any game at all dependent upon the exercise of human skill is essentially unpredictable. If this were not so, match games like golf and trap shooting would really be dreary, monotonous affairs.

It seems to us that inasmuch as the machine itself is on trial, so to speak, it should not be condemned unless this element of unpredictability is inherent in it. True, the player when he "activates" the device by inserting his coin cannot predict what score he will make; but from the standpoint of the machine there is no occasion even to *predict* that there will be an accurate registration of his control of the pucks as the player slides them expertly or inexpertly toward the springs forming contact with the scoreboard. Such is a certainty.

It is our thought that the element of unpredictability is not supplied because a player may not be sure what score he can accomplish, but that it must be inherent in the machine. Parenthetically, if he could be sure, why would he play? The effort would not compensate him in physical or mental exercise. And we do not consider that a spot of rust on the puck or an uneven place on the alley would remove the device from a standing of respectability and legality to one of one-armed-banditry. Such theoretical defects in one machine should not condemn the design of all.

We all know full well the vicious devices the cited statute was calculated to destroy, but we know also that a too drastic and intolerant interpretation of an act of this kind may well result in undermining its true and lofty purpose.

We conclude that in the process from the insertion of a coin until the last puck has been slid down the alley, the score totaled has not depended on chance or other result unpredictable by the player, except such chance or unpredictability as is traceable to his own skill, which we interpret the law not to mean, as distinguished from the chance or unpredictability of the mechanism, which we construe the law to proscribe.

Thus in cases of this type it is the machine which is on trial in each case. Prohibitory statutes such as the ones under consideration here are to be strictly construed. They cannot be properly construed at all unless there is some finding by the trial court as to the nature of the machines and in particular that the machines are illegal and improper as defined by section 849.16, Florida Statutes.

The plea of guilty alone does not in cases of this category establish the quality of the machine and determine its legality or illegality. The plea of guilty does remove the necessity for any proof as to ownership, possession or operation for such is admitted and all defenses of that nature must be considered waived.

It is difficult to conceive of a conviction of appellant, even on a plea of guilty, if there were no machine at all. It must necessarily follow that a guilty plea to the operation, possession or ownership

of a coin machine that is legal and not contemplated by section 849.16 should not afford a basis for a proper conviction.

The record as it now stands is completely silent as to the nature and character of the machines. Nothing more than their absorbing names are known and from that it is impossible to distinguish between "Ballsa Poppin", "Auto Race" and "Bally Speed Bowler". Apparently none of the machines was introduced in evidence and therefore cannot be examined or reviewed by this court.

It was the duty of the trial court in connection with the adjudication of the guilt of the defendant appellant to make a direct finding of the illegality of the machines referred to in the appropriate count of the information, if the machines were in fact illegal, within the definition set forth in section 849.16, Florida Statutes. In other words, the trial court failed to determine the status and character of the coin-operated device which the state apparently produced as to whether it was legal or illegal.

It is therefore ordered and adjudged that the judgment and sentence of the trial court recorded July 16, 1957, in the clerk of the court of crimes minute book 77, page 734, are hereby set aside and this case is remanded to the trial court for a new trial upon the information and plea of the appellant which shall include a direct finding and determination by the trial court as to the legality or illegality of the coin machines referred to in the information.